```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION
```

**JESSIE FISHER, *et al.*,**          \*
                                       \*
    Plaintiffs,              \*
                                       \*
vs.                                    \*   CIVIL ACTION No.03-00566-WS-B
                                       \*
**CIBA SPECIALTY CHEMICALS**           \*
**CORPORATION, *et al.*,**             \*
                                       \*
    Defendants.              \*

<u>ORDER</u>

This case is before the Court on a number of pending discovery motions. Turning first to Defendants' Motion to Compel (Doc. 187) and Plaintiffs' opposition thereto (Doc. 204), the undersigned concludes that Defendants' motion is due to be **GRANTED in part**, and **DENIED in part**. In their motion, Defendants contend that Plaintiffs have provided inadequate responses to Requests For Production No. 9, No. 10 and No. 13. The subject discovery requests and responses are as follows:

<u>Request No. 9</u>

    All documents related to the actual or potential effect or impact on Your Property of any alleged presence of any chemical or hazardous substance you contend was used or released by Defendants on or in the vicinity of Your Property.

<u>Response</u>

    Plaintiff objects to this discovery request to the extent that, in whole or in part, it is overly broad.

>Plaintiff objects to this request for production in whole or in part due to the fact that this information will be obtained through expert testimony.

Request No. 10

>All testing data, sampling data, reports, analyses, charts, maps, graphics, electronic or magnetic media, together with the materials sampled on which the same were based, related to the presence of contamination as alleged in the Complaint of any soil, groundwater, surface water, well water, municipal drinking water, or air, or other substance that has actually or potentially affected Your Property or the Property of any alleged class member.

Response:

>No items have been identified-after a diligent search- that are responsive to the request.

Request No. 13

>All documents which you contend prove or tend to prove, support, substantiate, memorialize, evidence, corroborate or any way reflect that your Property or any Property owned by other members of the putative class has diminished in value due to any events, acts, or omissions alleged in the Complaint, including the presence of any chemical or hazardous substance you contend was used or released by Defendants.

Response:

>Plaintiff objects to this discovery request to the extent that, in whole or in part, it is overly broad. Under FRCP 26(b)(1)-(2), this discovery request is unduly burdensome [] and not appropriately and reasonably limited in location, scope or in time and goes beyond the class representatives.

(Doc. 187 at 4-5).

According to Defendants, Plaintiffs have failed to produce

2

"all sample data and backup information" in response to the above-referenced production requests. (Id. at 5-6). Defendants further contend that the sampling provided by Plaintiffs thus far, have been produced in a "haphazard manner, clearly scrambled and disorganized[.]" (Id. at 6). In response, Plaintiffs contend that they have "fully complied with Defendants' requests and provided Defendants with every piece of data and/or information provided to Plaintiffs from Marco Kaltofen, PE and Boston Chemical Data Corporation." (Doc. 204 at 2 (emphasis omitted)). Plaintiffs further contend that the referenced materials are fully and completely responsive to Defendants' production requests, and were provided to Defendants in the manner in which they are kept in the ordinary course of business. (Id. at 3).

Rule 34(a) of the Federal Rules of Civil Procedure provides that "[a]ny party may serve on any other party a request [for] . . . any designated documents . . . which are in the possession, custody, or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a) (2005 Revised Ed.). The requesting party is entitled to obtain "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [r]elevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (2005 Revised Ed.).  Thus, in order to compel the production of documents, the requesting party must first demonstrate the relevance of the documents.  Once the relevance of the discovery sought is established, the burden is on the objecting party to show why it should not be permitted. Additionally, the Advisory Committee Notes to Rule 34, discussing the 1993 Amendments thereto, make clear that if an item or category is objectionable only in part, the responding party must comply with the unobjectionable portions of the request.  See Fed. R. Civ. P. 34 Adv. Comm. Notes (2005 Revised Ed.).

    Based upon the record before the Court, it is clear that notwithstanding Plaintiffs' written discovery responses, they are not disputing the relevancy of the requested documents, and have, in fact, produced the documents in their possession and/or control that are responsive to Defendants' production requests. Accordingly, Plaintiffs are **DIRECTED** to supplement their written responses to Requests For Production No. 9, No. 10 and 13 by **September 19, 2005.**  The supplemental responses shall detail the documents that have been produced in response to Defendants' production requests, and confirm that no responsive documents

have been withheld.[1]

Defendants have also filed a motion to compel Tracy Broussard (hereinafter "Ms. Broussard") to submit to a deposition and produce documents in response to the subpoena that Defendants served upon her.  (Docs. 192, 193).  The undersigned has reviewed Defendants' motion, and Plaintiffs' motion seeking to quash the subpoena (Doc. 200), and concludes that the motions are due to be **GRANTED in part**, and **DENIED in part**.  Defendants seek to depose Ms. Broussard, and have her produce records maintained at the "McIntosh Claims Office." (Doc. 193).  According to Defendants, Ms. Broussard has been involved in community organizations in the McIntosh area for a number of years, and some of those organizations have investigated and complained about possible contamination in the area allegedly due to the Ciba and Olin plants.  (Id.) Defendants indicate that they want to depose Ms. Broussard about claims of community members and attempts to organize the community with respect to contamination.  (Id.)

Plaintiffs object on the ground that Ms. Broussard, along

---

[1]Plaintiffs are cautioned that any documents and/or other data that they may rely upon in connection with the class certification hearing and which are responsive to Defendants' production requests must be timely produced.  Otherwise, such documents and data are subject to being excluded as untimely.

with Mr. Edgar Moss, have been employed as legal assistants by Plaintiffs' counsel since August 2003, and deposing Ms. Broussard is akin to deposing Plaintiffs' counsel or a paralegal in their firm.  (Doc. 200 at 2).  Plaintiffs contend that subjecting Ms. Broussard to a deposition, and requiring her to produce documents regarding her employment with Plaintiffs' counsel, will invade the attorney-client and attorney work product privileges.  (Id.)  According to Plaintiffs, the McIntosh office is used by Plaintiffs' counsel to interview witnesses, collect confidential information concerning other possible personal injury claims not related to this suit, store equipment for sampling, etc.; thus, documents maintained in the office are entitled to protection under the attorney-client and attorney work product privileges.  (Id.)

Rule 30(a) provides that the testimony of any person may be taken by deposition; however, requests to depose counsel are, as a general rule, viewed with disfavor.  In Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), the Eighth Circuit noted that:

> [t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation . . . [and] detracts from the quality of client representation . . . [and has a] "chilling effect" . . . on the truthful communications from the client to the attorney . . . .

6

The record reflects that Ms. Broussard is employed as a legal assistant, as opposed to legal counsel, by two of the law firms representing Plaintiffs in this case. Prior to her employment with Plaintiffs' counsel, it appears that she was active in community organizations seeking to investigate and complain about possible contamination in the McIntosh area due to the Ciba and Olin plants. While it is likely that much of the work in which Ms. Broussard is engaged as a legal assistant has been at the direction of Plaintiffs' counsel and in anticipation of litigation, her work with community organizations seeking to investigate and complain about possible contamination in the McIntosh area pre-dates her employment, and is relevant to the instant action in which Defendants' Ciba facility is alleged to be a source of contamination in the McIntosh area. Accordingly, Plaintiffs' Motion to Quash Ms. Broussard's subpoena is **DENIED** to the extent it seeks to bar her deposition.

In addition to seeking to depose Ms. Broussard, Defendants also request that she produce "[a]ll documents in your possession at the McIntosh claims office, including but not limited to any minutes of meetings held involving Washington County residents or property owners and all health surveys done

of Washington County residents or property owners." (Doc. 193 at Exs. 1 and 2). Plaintiffs assert that the McIntosh claims office is operated by Plaintiffs' counsel, that the work space is used in connection with their work on this lawsuit, and that of the 66 items located in the office, Defendants are only entitled to the three which have already been produced in response to Ms. Broussard's subpoena. (Doc. 200). Plaintiffs seek to block Defendants' efforts to obtain the remaining items on the grounds that some of the items are not relevant or are publicly available, and others are protected by the attorney-client privilege and the attorney work product doctrine. (Id.)

According to Plaintiffs, of the 66 items located in the McIntosh Claims office, three, namely items 13, 14 and 15, are relevant and have been produced to Defendants. (Id. at 3). The undersigned has reviewed the list of 66 items, and notes as a preliminary matter that at least 29 of the items, namely items 4, 5, 6, 7, 11, 16, 21, 22, 23, 24, 25, 26, 27, 28, 33, 34, 37, 41, 42, 43, 44, 45, 50, 52, 62, 63, 64, 65 and 66 are not arguably relevant to any issue in this case. Included among these items are personal bibles, family pictures and dictionaries. Because these items have no relevancy to this case, and Defendants have not shown any legitimate basis for requesting these items, their motion to compel production is

**DENIED** as to these items.  Of the remaining items, Plaintiffs have not asserted any privilege claim with respect to 13 of the documents, namely items 8, 9, 10, 12, 17, 18, 30, 38, 40, 57, 58, 59, and 60.  Based on the undersigned's review of the listing[2] provided by Plaintiffs, the above-listed items are arguably relevant or likely to lead to the discovery of admissible evidence.  The fact that some of the items may be publicly available does not necessarily mean that they are readily available.  Plus, under Rule 34, Defendants have a right to inspect the documents before making a decision about incurring the cost of having the documents copied.  Accordingly, Plaintiffs are **DIRECTED** to produce for inspection and copying items 8, 9, 10, 12, 17, 18, 30, 38, 40, 57, 58, 59, and 60 by **September 19, 2005.**

Plaintiffs contend that the remaining documents are protected by the attorney-client privilege and/or the attorney work product doctrine although, they have provided little detail about the basis for their assertion.  (Doc. 200).  In a diversity case involving claims governed by state substantive law, state law also controls application of the attorney-client

---

[2]Although Plaintiffs' counsel provided a listing of the documents in dispute, no in camera inspection was requested. Thus, the undersigned's decision is based upon the information provided in Plaintiffs' listing.

privilege.  See Fed. R. Evid. 501 (2005 Revised Ed.); McClary v. Walsh, 202 F.R.D. 286, 290 (N.D. Ala. 2000).  The Alabama law regarding the attorney-client privilege provides that in order to be protected against disclosure, a communication between a lawyer and client must meet several criteria.  McClary, 202 F.R.D. at 290-291 (citing Hunt v. State, 642 So. 2d 999, 1033-1034 (Ala. Crim. App. 1993)).  The burden of proving that a particular communication comes with the privilege rests on the party asserting the privilege.  McClary, 202 F.R.D. at 290-291.  The resisting party must establish the existence of the attorney-client relationship, the facts which demonstrate that the communications were within the privilege, and the prejudicial effect to the client which would result from any disclosure of the privileged information.  Id.

While Alabama's law of privilege governs in this federal diversity suit, the work product doctrine is governed by federal law and provides the primary decisional framework in matters relating to the attorney work product doctrine.  See generally Hickman v. Taylor, 329 U.S. 495 (1947); Cutrale Citrus Juices USA, Inc. v. Zurich American Ins. Group, et al., 2004 U.S. Dist. LEXIS 22487. (M.D. Fla. Sept. 10, 2004).  The work product doctrine protects from disclosure materials that reveal an attorney's mental impressions and legal theories and were

prepared by the attorney in contemplation of litigation. Hickman, 329 U.S. at 512; Auto Owners Ins. Co. v. Totaltape, Inc., 135 F.R.D. 199, 201 (M.D. Fla. 1990); Fed. R. Civ. P. 26(b)(3) (2005 Revised Ed.).  "[T]he mere fact that a document or record was created by attorneys in anticipation of litigation does not make it work product unless it also reveals an attorney's mental impressions and legal theories." Hines v. Widnall, 183 F.R.D. 596, 600 (N.D. Fla. 1998).  The party resisting discovery bears the burden of demonstrating the applicability of the work product doctrine.

In the case sub judice, Plaintiffs contend that items 19, 20, 31, 32, 35, 39, 46 and 61, which include expense sheets, mileage sheets, checkbooks, time sheets and bank statements for the McIntosh office are subject to the attorney-client privilege and the work product doctrine.  (Doc. 200 at Ex. 5).  With the exception of the time sheets (items 19, 35, 61), which may reveal client communications, or the mental impressions or thoughts of counsel, the other items, such as expense sheets and checkbooks, can hardly be said to reveal either confidential client communications or the mental impressions or thoughts of counsel.  Hines, 183 F.R.D. 596 (holding that the mere fact that a document or record was created by attorneys in anticipation of litigation does not make it work product unless it also reveals

11

an attorney's mental impressions and legal theories); McClary, 202 F.R.D. at 293 (noting that "[t]he [attorney-client] privilege extends 'to the substance of matters, communicated to an attorney in professional confidence[]' . . . [and concluding that] [t]he deposit and disbursement of money in a commercial checking account are not confidential communications[]"). Although Plaintiffs have failed to establish that the above-referenced items, except items 19, 35, and 61, are entitled to protection under the attorney-client privilege or the attorney work product doctrine, the undersigned finds that information regarding Plaintiffs' counsel's checking account and expenses claimed is simply not relevant to the claims or defenses in this case.  Accordingly, to the extent Defendants seek to compel production of items 19, 20, 31, 32, 35, 39, 46 and 61, their motion is **DENIED**.

Plaintiffs also assert that Defendants are not entitled to documents which reflect Plaintiffs' list of McIntosh clients (item 29), file on each class representative in the Olin and Ciba cases (items 55, 56), death certificates and a listing of McIntosh residents who have died of cancer (items 48, 51) and list of visitors to the claims office (item 47).  (Doc. 200 at Ex. 5).  Plaintiffs further contend that Defendants already know the identity of the named Plaintiffs; thus, they do not need the

list of class representatives for the Olin and Ciba cases (items 53, 54). (Id.)  Information regarding a client's identity generally falls outside the bounds of the attorney-client privilege unless an exception, such as possible incrimination of the client, applies. See, e.g., In Re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997-998 (11th Cir. 1992). Upon a review of the record before the Court, the undersigned concludes that Plaintiffs have failed to proffer sufficient facts to support their claim of privilege with respect to their list of McIntosh clients (item 29). Plaintiffs have presented nothing to suggest that the clients have any expectation that their identities would be kept confidential. Accordingly, Plaintiffs are **DIRECTED** to produce for inspection and copying, item 29, by **September 19, 2005.** Items 55 and 56, which comprise Plaintiffs' counsel's files on each class representative in the Olin and Ciba cases, are clearly entitled to protection as attorney work product and attorney-client privileged communications. Because Plaintiffs' claims in this case are limited to alleged property damages, the undersigned is unable to discern how death certificates and a listing of McIntosh residents who have died of cancer (items 48, 51) are remotely relevant to any claim or defense in this case. Likewise, Defendants have not demonstrated that the blank employment contracts (item 1),

personal injury health surveys (items 2, 3), and medical releases (item 49) are relevant to any claim or defense in this case. Thus, Defendants' motion to compel these items is **DENIED**, as is the request for a list of visitors to the McIntosh office[3] (item 47).

Also pending before the Court is Plaintiffs' Motion to Compel (Doc. 149) Kellogg, Brown & Root (hereinafter "KBR") to respond to identical subpoenas that were served on four different KBR's offices. KBR objected to the subpoenas as overly broad, and requested that it be awarded fees and costs incurred in objecting to the subpoena. (Doc. 146). The undersigned conducted a discovery conference on June 21, 2005 to address the subpoenas and other discovery items. At the hearing, Plaintiffs argued that KBR was the contractor responsible for the construction of Defendants' DDT plant in 1952, and that the company has had, and continues to have, extensive involvement in other construction projects on the Ciba site, including the design and/or implementation of the "pumping of contaminated ground water beneath the Ciba facility." Plaintiffs further argued that while all of the requested

---

[3] Given that Plaintiffs have been directed to produce the list of McIntosh clients (item 29), the undersigned finds that the request for a list of all visitors to the McIntosh office borders on oppressive and annoying.

information was needed, of immediate concern were the "process flow diagrams that relate to the dry end of the processing." According to Plaintiffs' counsel, this information is needed in order for their air modeler "to construct a proper air dispersion model to determine the size of the air class for the class certification hearing."  KBR presented evidence which suggested that locating and producing all of the information requested in the subpoenas would involve extensive man-hours, and would likely cause KBR, a non-party, to incur in excess of $100,000 in order to properly respond to the subpoenas.

Based upon the information presented, the undersigned determined that Plaintiffs' subpoenas were overly broad, as discovery during this phase of the proceedings is restricted to class certification issues.  The Court held in abeyance Plaintiffs' request for the process flow diagrams until it could be determined if the diagrams were contained in the vast documents being produced by Defendants in this case.  It appears, based on additional information that was submitted to the Court, that while Defendants have produced drawings of the "wet end" of the process flow diagrams pertaining to the Ciba DDT facility, Defendants do not have, or are unable to locate diagrams relating to the "dry end" of processing.  In light of Defendants' inability to produce the diagrams, Plaintiffs'

demonstrated need for the documents, and KBR's representation that they possess "2500 Aperture cards with plant drawings" from the Ciba facility, KBR is **DIRECTED** to make these drawings available for inspection and copying by Plaintiffs no later than **September 19, 2005.** Plaintiffs shall bear all copying expenses incurred in connection with the production of these plant drawings.

The undersigned has considered and declines to grant KBR's Motion for Costs and Expenses (Doc. 164). There is no evidence in the record before the Court that the subpoenas were issued in bad faith, or for an improper purpose. Moreover, while KBR contends that Plaintiffs failed and refused to reasonably limit the breadth of the subpoenas, the record reflects good faith discussions between counsel for Plaintiffs and KBR to reach an agreement regarding the scope of the subpoenas. Accordingly, KBR's motion for costs is **DENIED.**

DONE this **7th** day of **September, 2005.**

                                            **/s/ Sonja F. Bivins**
                                      **UNITED STATES MAGISTRATE JUDGE**