IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JESSIE FISHER**, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 03-0566-WS-B |
| | ) |
| **CIBA SPECIALTY CHEMICALS** | ) |
| **CORPORATION**, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Defendants' Motion to Sever (doc. 479). The Motion has been briefed and is ripe for disposition at this time.[1]

**I.      Background.**

This action involves claims brought by five individual plaintiffs who own property in or around Washington County, Alabama alleging diminution in value to their real estate caused by environmental contamination from a nearby chemical manufacturing facility that is or has been owned at various times by defendants. Plaintiffs contend that their properties are contaminated by DDT emanating from Ciba's McIntosh plant. The case was originally filed as a putative class action. On July 14, 2006, however, the undersigned entered an Order (doc. 386) denying plaintiffs' Motion for Class Certification on the grounds that the purported class representatives were not qualified to represent the class because they lived outside the proposed class area and otherwise lacked standing, the class boundaries were not adequately defined or clearly ascertainable, and plaintiffs had not shown that common questions of law or fact predominate over individual-specific questions. *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273

---

[1]      Also pending and ripe are defendants' Motions for Summary Judgment (doc. 405, 406), which seek entry of judgment on certain discrete issues. In the interests of judicial economy, those Motions will be addressed in tandem with the more recently filed Motions for Summary Judgment (doc. 502, 503), which will become ripe on July 13, 2007. All of those Motions will be ruled on via separate order.

(S.D. Ala. 2006). In the wake of that ruling, the plaintiffs have continued to prosecute their individual causes of action on state-law theories of negligence, conspiracy, strict liability, trespass, nuisance, intentional misrepresentation, negligent misrepresentation, fraud and fraudulent concealment, constructive fraud, and punitive/exemplary damages, as well as a federal claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* As reflected in the Fourth Amended Class Action Complaint (doc. 400) filed on October 30, 2006, all five plaintiffs (Jessie Fisher, Arlean Reed, Barbara Byrd, Ronald McIntyre and Sharon Greer) assert the same claims against the same defendants on the same legal theories.

On April 27, 2007, defendants filed a Motion to Sever (doc. 479), pursuant to Rules 20 and 21, Fed.R.Civ.P., seeking to splinter the trial of these proceedings (which is slated for the August 2007 trial term) into five separate trials, one for each plaintiff. Defendants ground their Motion on assertions that a common trial would be inefficient and prejudicial.[2] Plaintiffs oppose the Motion, arguing that severing the plaintiffs' essentially identical claims would effect great inefficiency, undue delay and undue expense, while also burdening the Court with presiding over a largely similar trial five times in a row.

## II.     Analysis.

### A.     *Legal Standard.*

Defendants' Motion is filed pursuant to Rule 20(b), Fed.R.Civ.P., which provides that courts "may order separate trials or make other orders to prevent delay or prejudice," and Rule 21, Fed.R.Civ.P., which provides that "[a]ny claim against a party may be severed and proceeded

---

[2] Defendants also argue in their Motion that severance is warranted because plaintiffs never moved for consolidation and this Court never entered an order consolidating the five cases. (Defendants' Brief (doc. 479), at 5.) But this argument turns the posture of this case on its head. The five plaintiffs here did not bring five separate cases; to the contrary, they brought a single integrated lawsuit. Nothing in the Federal Rules of Civil Procedure would obligate them to seek permission from the Court to consolidate their claims; after all, plaintiffs' claims are <u>already</u> consolidated on the face of the pleadings. Rather, the onus is on defendants to seek severance of the various plaintiffs' claims if defendants believe that such claims were soldered together improperly or that some undue prejudice or inefficiency would result from trying them en masse. That is precisely what defendants have done. The Court therefore rejects defendants' apparent suggestion that plaintiffs in a multi-plaintiff lawsuit are obligated to move formally for consolidation of their claims (essentially requesting ratification of something they have already done) as a condition precedent to a joint trial.

with separately." *Id.*[3]

The determination of whether to grant a motion to sever is left to the discretion of the trial court. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1324 n.16 (11th Cir. 2000) ("The trial court likewise has discretion under Rule 20(b) to order separate trials 'to prevent delay or prejudice.'"); *Grigsby v. Kane*, 250 F. Supp.2d 453, 456 (M.D. Pa. 2003) (in Rule 21 severance context, "the court has virtually unfettered discretion in determining whether or not severance is appropriate"). Among the factors considered in exercising that discretion include whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied. *See, e.g., Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 12 (D.D.C. 2004) (severance of plaintiffs' claims turns on considerations of whether claims arise from same transaction or occurrence, whether claims present some common question of law or fact, whether settlement of claims or judicial economy would be facilitated, whether prejudice would be avoided if severance were granted, and whether different witnesses and documentary proof are required for the separate claims); *In re High Fructose Corn Syrup Antitrust Litigation*, 293 F. Supp.2d 854, 862 (C.D. Ill. 2003) (same); *Wausau Business Ins. Co. v. Turner Const. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001) (same); *Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y. 1997) ("A court may order separate trials for three reasons: to avoid prejudice, to provide for convenience, or to expedite the proceedings and economize the use of resources."). In considering whether to order separate trials of any claims or issues, "the paramount consideration must remain a fair and impartial trial to all litigants through a balance of benefits and prejudice." *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp.2d 1333, 1334 (M.D. Fla. 2006) (citation omitted).

In assessing whether severance is appropriate under Rules 20 and 21, one factor is whether the claims arise from the same transaction. The Eleventh Circuit has opined that the term "transaction is a word of flexible meaning" that "may comprehend a series of many

---

[3] Defendants do not proceed under Rule 42(b); therefore, the Court will not consider that procedure here. *See McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993) (explaining that Rule 21 motions and Rule 42(b) motions "are distinct and preferably should be treated as such," even though they are often commingled in the caselaw).

occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Alexander*, 207 F.3d at 1323 (citations omitted). Likewise, for purposes of the commonality element, the *Alexander* panel stressed that "Rule 20 does not require that *all* questions of law and fact raised by the dispute be common, but only that *some* question of law or fact be common to all parties." *Id.* at 1324.

At the class certification stage, the Court has already found in this case that common issues do not predominate over individual-specific issues pursuant to Rule 23(b)(3). But the Rule 20 inquiry is distinct from that under Rule 23, and a ruling against the plaintiffs on the latter in no way suggests (much less mandates) a like outcome with respect to the former. Stated differently, there is no predomination prerequisite for joinder of multiple plaintiffs' claims, and Rule 20 contemplates a much lower threshold for allowing plaintiffs' claims to proceed to trial together than is required by Rule 23 for class certification. The touchstone of the Rule 20 joinder/severance analysis is whether the interests of efficiency and judicial economy would be advanced by allowing the claims to travel together, and whether any party would be prejudiced if they did. The Court now turns to that inquiry.

### B.    *Application of Standard.*

Defendants articulate four different grounds for their contention that severance of each plaintiff's claims from each other plaintiff's claims for trial purposes is appropriate. In particular, defendants argue that (i) plaintiffs' claims do not arise from the same transaction or occurrence; (ii) plaintiffs will rely on individualized evidence to prove their claims; (iii) defendants will invoke individual-specific defenses; and (iv) a common trial will be prejudicial to defendants.

The first three of defendants' contentions logically should be considered together, because they all are fundamentally challenges to the efficiency of trying all five plaintiffs' claims in a single trial. As the Order denying class certification spelled out in exhaustive detail, the evidence at trial will undoubtedly include both a core nucleus of common issues (*e.g.*, whether and when Ciba created DDT wastes; whether, when and how those wastes may have migrated offsite; the pathways of that migration; the characteristics and impacts of those chemicals on property values; whether Ciba misled the public concerning DDT contamination; whether Ciba manipulated government regulators on that point; whether Ciba conspired with others to avoid

cleaning up the contamination; etc.)[4] and a vector of plaintiff-specific issues (*e.g.*, whether plaintiff's property is contaminated with DDT, whether that contamination came from Ciba, whether plaintiff's claims are timely, the extent to which plaintiff's property declined in value, whether plaintiff relied on defendants' alleged fraudulent misrepresentations, whether plaintiff suffered injury as a result of such reliance, whether plaintiff's reliance was to his or her detriment, etc.).

Plainly, to conduct a single joint trial would be a strategy marked by both efficiencies, inasmuch as the issues of common proof need only be presented and decided once, and inefficiencies, inasmuch as there will be a certain degree of unique evidence and argument as to each plaintiff's claims that is not germane to the other plaintiffs' claims. What the Court must do, then, is to weigh and balance the efficiencies of trying all five plaintiffs' claims together against the inefficiencies of trying all five plaintiffs' claims together. Not surprisingly, each side advocates that the scales tip in a different direction. After careful consideration of the respective arguments of counsel, the Court is persuaded that, while neither approach is optimal, the interests of efficiency would be best served by keeping the plaintiffs' claims together for trial in their present consolidated posture. The Court anticipates that there will be substantial overlapping background evidence for all plaintiffs' claims concerning the environmental history and activities of the Ciba plant, and the interactions of Ciba with the media, government regulators, and alleged co-conspirators. Moreover, plaintiffs have argued, and defendants have not disputed, that it is probable that the same roster of nine expert witnesses (three for plaintiffs and six for defendants), all of whom live out of state, will be called to testify with respect to each plaintiff's claims. To require these nine experts (not to mention counsel, many of whom live in

---

[4] These commonalities are sufficient to satisfy the flexible definition of "transaction" employed for Rule 20 purposes. Contrary to defendants' position, plaintiffs' evidence of the creation and migration of DDT wastes from Ciba's McIntosh facility supports a conclusion that plaintiffs' claims all arise from the same transaction and occurrence, given the "logical relationship" of the "series of many occurrences" that gives rise to those claims. *Alexander*, 207 F.3d at 1323. Likewise, the shared issues outlined above unquestionably constitute the requisite common questions of law or fact necessary to support joinder under Rule 20. To the extent that defendants maintain that the five plaintiffs are misjoined in this lawsuit, then, that argument fails.

Texas and Louisiana) to travel to Mobile, Alabama five times in quick succession (or to sit and wait in a hotel for days on end) to testify in five different trials would be financially foolhardy and needlessly wasteful of the parties' economic resources, potentially even rendering these trials cost-prohibitive.[5]  Moreover, if these nine experts would be testifying to substantially similar, partially overlapping opinions in each of these five trials, the attendant drag on the efficient administration of justice would be considerable, as this Court would be subjected to something akin to a judicial *Groundhog Day*.  Under the specific circumstances of this case, it appears far preferable from a judicial economy standpoint to hear all of the evidence once, including both common and plaintiff-specific facts, in a single trial proceeding than to hear the common evidence five times, with plaintiff-specific testimony being confined to each plaintiff's individual trial.  Accordingly, the Court finds that considerations of efficiency and delay do not militate in favor of a Rule 21 severance.[6]

Defendants also maintain that a joint trial would be "extremely prejudicial" to them. (Doc. 479, at 5.)[7]  This objection is apparently threefold, to-wit: (a) a multiplicity of plaintiff-specific facts will confuse the jury; (b) to the extent that one plaintiff's claims are stronger than

---

[5] To illustrate the point, the aggregated hourly rate of these nine expert witnesses approaches $3,000, which equals or exceeds the county-assessed property values of four of the five plaintiffs' property at issue herein.

[6] Defendants decry plaintiffs' efficiency arguments, maintaining that "[e]conomy is a particularly illusory justification when Plaintiffs' counsel have indicated they may file as many as 2000 additional cases involving McIntosh residents alleging personal or property injuries due to alleged contamination." (Reply, at 2.)  This assertion confuses the issue.  The question before the Court is whether the claims of these five plaintiffs (and no others) should be tried collectively or separately.  Whatever future intentions plaintiffs' counsel may or may not have concerning as yet unfiled lawsuits on behalf of other persons is utterly irrelevant and will not be considered.

[7] Defendants even go so far as to assert that a joint trial would violate their Seventh Amendment right to a trial by jury.  Of course, even if all five plaintiffs' claims are tried together, those claims will still be tried to a jury, with appropriate limiting instructions as to evidence relevant to the claims of one plaintiff but not to others.  The Court is unaware of any authority for the proposition that the joinder of multiple plaintiffs' claims in such circumstances is tantamount to a Seventh Amendment violation, and defendants have cited none.  As such, the undersigned finds no merit to defendants' assertion that their constitutionally guaranteed right to a jury trial is somehow imperilled by plaintiffs' plan to prosecute their claims jointly.

the others', evidence as to that plaintiff may unfairly taint the jury as to the other plaintiffs' claims; and (c) consolidation for trial will allow plaintiffs to "bolster[] their individually weak cases by a suggestion that contamination is widespread." (Reply (doc. 492), at 3.)  None of these considerations are persuasive.  As an initial matter, the risk of jury confusion in determining which facts attach to which plaintiffs appears minimal.  Federal juries are routinely asked to parse facts that are relevant to particular claims or particular parties, and are able to do so without difficulty so long as counsel presents the evidence in a cogent, orderly fashion that makes clear which evidence attaches to which particular claims or defenses.  Furthermore, defendants' "taint" argument disregards the ready availability of limiting instructions (should counsel draft and propose same) designed specifically to circumscribe the uses for which particular evidence may be considered, as well as pattern charges stressing that the claims and defenses of each party must be considered separately and independently from those of each other party.[8]  There is no reason to believe that a jury would be unwilling or unable to follow such instructions in this case; therefore, defendants' protestations of prejudice are misplaced.  *See, e.g., Lockaby v. JLG Industries, Inc.*, 2007 WL 1379983, *1 (11th Cir. May 11, 2007) ("We assume that jurors carefully follow instructions for this assumption underpins our constitutional system of trial by jury."); *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005) ("A jury is presumed to follow the instructions given to it by the district judge.").

      Finally, as for defendants' stated concern that the joinder of plaintiffs' claims in one trial might give rise to a suggestion that contamination from the Ciba plaint is widespread, the Court fully anticipates that plaintiffs' evidence – whether presented in one trial or five trials – will be that the alleged contamination is, in fact, widespread.  Thus, this "suggestion" will be before the

---

[8] For example, Section 6.2 of the Basic Instructions of the Eleventh Circuit Pattern Jury Instructions reads, in part, "When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately."  *Id.*  This pattern charge could readily be adapted to address defendants' concern.  Similarly, a charge such as the following could be given: "Although there are [five] plaintiffs in this action, it does not follow from that fact alone that if one plaintiff is entitled to recover, [the others] are entitled to recover.  The defendant is entitled to a fair consideration as to each plaintiff, just as each plaintiff is entitled to a fair consideration of that plaintiff's claim against the defendant."  *Federal Jury Practice and Instructions* (5th Ed.), § 103.13.  An instruction along these lines would alleviate any reasonable concern that defendants might harbor on this point.

jury in plaintiffs' evidentiary submission at trial, irrespective of whether severance is granted.

In short, the Court finds that defendants have failed to make a showing of prejudice sufficient to justify the heavy burden that would be visited on the litigants and this Court alike by virtue of the proposed fragmentation of the plaintiffs' claims into five overlapping trials.

### III.     Conclusion.

There are unquestionably common issues of fact and law linking all five plaintiffs' claims of diminution in property value from alleged DDT contamination on their properties arising from activities at Ciba's chemical manufacturing plant in McIntosh, Alabama, and all such claims clearly arise from the same transaction or occurrence for Rule 20 purposes.  As such, plaintiffs' joinder of all of their claims into one lawsuit was proper.  Those claims may be severed from one another under Rule 21 in the Court's discretion based on considerations of efficiency, judicial economy and prejudice.  Here, if plaintiffs' claims are disaggregated into five separate, repetitive jury trials, the expense to the parties and the drain on scarce judicial resources will be considerable, perhaps even enormous.  By contrast, the risk of prejudice to defendants arising from the cumulative presentation of all plaintiffs' evidence in a single trial proceeding is remote.  Contrary to defendants' position, nothing in this arrangement would infringe on their Seventh Amendment right to trial by jury.  Whatever risk of prejudice might exist is satisfactorily attenuated by the availability of limiting instructions and jury charges to ensure that the jury does not use any admitted evidence for any improper purpose.  For all of these reasons, in the discretion of the Court, the Motion to Sever (doc. 479) is **denied**.  The claims of all five plaintiffs will be tried concurrently, before a single jury, in the August 2007 trial term.

DONE and ORDERED this 20th day of June, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE